IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 17, 2020 Session

**STATE OF TENNESSEE v. ALFRED LEE BOYKIN, III**

**Appeal from the Criminal Court for Hamblen County**
**No. 18CR033      Alex Pearson, Judge[1]**

---

**No. E2019-02070-CCA-R3-CD**

---

Pursuant to Tennessee Rule of Criminal Procedure 37, the defendant, Alfred Lee Boykin, III, appeals two certified questions of law related to the trial court's denial of his motion to dismiss his case due to excessive delay in prosecuting the case. Because the defendant failed to establish prejudice flowing from the more than two-year delay in this case, the trial court did not err by denying his motion to dismiss. The judgments of the trial court are, therefore, affirmed.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

M. Todd Ridley and Willie Santana, Assistant District Public Defenders, for the appellant, Alfred Lee Boykin, III.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Kim O. Morrison, Connie Trobaugh, and David Gratz, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Following a traffic stop on June 4, 2017, the defendant was arrested and charged with possession of a Schedule III drug, possession of methamphetamine, possession of a legend drug, driving after his driver's license had been revoked, and violating the financial responsibility and vehicle registration laws. In May 2019, the

---

[1]      Judge John F. Dugger, Jr., presided over the hearing on the defendant's motion to dismiss. A July 26, 2019 Order of Interchange transferred the case to the purview of Judge Alex Pearson.

defendant filed a motion asserting his right to a speedy trial and arguing that the State had "been dilatory in its responsibility [to] promptly present its case to the grand jury." On that same day, the defendant moved to dismiss the case because of pre-indictment delay attributable "to bureaucratic indifference or negligence." In support of his motion, the defendant argued that despite the case's having been bound over to the grand jury on January 24, 2018, the State had made no effort to secure an indictment.

On July 8, 2019, the Hamblen County Grand Jury returned an indictment charging the defendant with one count of simple possession of the Schedule III controlled substance buprenorphine, one count of possession of the legend drug gabapentin, one count of driving on a revoked license, one count of violating the financial responsibility act, and one count of violating the vehicle registration law.

At the July 26, 2019 hearing on the defendant's motion to dismiss, Ashley Price, an employee of the public defender's office, testified that, as part of the duties of her job, she attended the "arraignment dates" for the clients of the public defender's office. She explained that these court dates occurred every two to three months until an accused had been indicted and that the accused was required to attend each hearing date. A failure to appear at one of the proceedings could result in the issuance of a capias followed by an arrest.

Ms. Price said that the public defender's office was not provided with discovery materials until an indictment had been returned. During this line of questioning, the prosecutor suggested that any testimony about what had happened prior to the defendant's indictment was "irrelevant" because he had been indicted, and the trial judge agreed that the issue was "[k]ind of moot now." Ms. Price said that the defendant's case was commenced by his arrest on June 4, 2017. The report of the analysis of the substances seized from the defendant was completed on December 18, 2018. During the intervening period of time, the defendant continued to appear at each arraignment hearing as required. The defendant expressed that "he was having some issues with his employer" because of the necessity of attending the proceedings.

The trial court asked how the defendant had been "prejudiced by this? He's out on bond." The defendant's attorney stated that, although the defendant had been released on bond, "his life has been on hold during this timeframe . . . . for a bunch of misdemeanors." The judge replied: "No, I'm talking about to try this case. I'm not talking about how he's prejudiced that he had to come up here and drive up here. I'm talking about factually to try this case how he is prejudiced." The trial court denied the defendant's motion based upon his failure to show any prejudice by the delay between his arrest and the indictment. The court granted the defendant a trial on the next available trial date,

October 15, 2019, without ruling specifically on the defendant's motion to dismiss on the basis of a speedy trial violation.

After the trial court denied the motion to dismiss, the defendant moved unsuccessfully for an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. Thereafter, the defendant pleaded guilty as charged to simple possession, driving on a revoked license, and violating the financial responsibility and registration laws. The State agreed to dismiss the remaining charge, and the defendant received an agreed total effective sentence of 11 months and 29 days to be served on supervised probation with credit for time served. The defendant reserved, pursuant to Tennessee Rule of Criminal Procedure 37(b)(2), two certified questions of law. The trial court's order, which was incorporated by reference into the judgment forms, contained the following questions of law:

> 1. Whether, when [d]efendant was arrested in June 2017 but was not indicted by the Grand Jury until after [d]efendant filed a motion to dismiss in May 2019, the indictment should be dismissed as a result of pre-indictment delay cause by bureaucratic indifference or negligence attributable to the State, in violation of *United States v. Marion*, 404 U.S. 307 (1991) and *State v. Gray*, 917 S.W.2d 668 (Tenn. 1996)?

> 2. Alternatively, whether, when [d]efendant was arrested in June 2017 but not indicted by the Grand Jury until July 2019, the State's failure to timely submit this case to the grand jury following [d]efendant's arrest violated [d]efendant's constitutional right (the Sixth Amendment to the United States Constitution and Article One, Section 9 of the Tennessee Constitution) and statutory right (Tenn. Code Ann. § 40-14-101) to a speedy trial?

The order indicated that the parties agreed that the certified questions are dispositive of the case. The judgments incorporated the order by reference.

As an initial matter, we note that it is important to distinguish between delay that occurs between arrest and indictment, which, standing alone, may justify dismissal pursuant to Tennessee Rule of Criminal Procedure 48, and delay that occurs between arrest and trial, which implicates the constitutional right to a speedy trial.[2] Tennessee Rule of

---

[2] The Due Process Clause of the Fifth Amendment also requires dismissal of an indictment "if it

-3-

Criminal Procedure 48 provides that the trial "court may dismiss an indictment, presentment, information, or complaint if unnecessary delay occurs in . . . presenting to a grand jury a charge against a defendant who has been held to answer to the trial court." Tenn. R. Crim. P. 48(b). On the other hand, by statute and by federal and state constitutional guarantees, an accused has the right to a speedy trial. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also* T.C.A. § 40-14-101. Delay between arrest and indictment does not create an error of constitutional dimension outside of its inclusion in any total period of pre-trial delay to be considered when determining whether the right to a speedy trial has been violated. *United States v. MacDonald*, 456 U.S. 1, 7 (1982) ("In addition to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim.").

The distinction between the avenues of relief is important because different standards of review and remedies attend the two. Dismissal under Rule 48 for unnecessary delay "can be with or without prejudice." *State v. Benn*, 713 S.W.2d 308, 310-11 (Tenn. 1986) (citations omitted). Dismissal "on a non-constitutional ground is normally without prejudice," while dismissal with prejudice "for want of prosecution, not arising from a constitutional violation should be utilized with caution and only after a forewarning to prosecutors of the consequences." *Id.* In contrast, "[i]f a court determines . . . that a defendant has been denied a speedy trial," the only available remedy is "the reversal of the conviction and dismissal of the criminal charges" with prejudice. *State v. Simmons*, 54 S.W.3d 755, 758-59 (Tenn. 2001) (citations omitted). Additionally, a reviewing court applies an abuse of discretion standard of review to the trial court's decision regarding dismissal of the indictment pursuant to Rule 48(b), *see State v. Harris*, 33 S.W.3d 767, 769 (Tenn. 2000) (citing *Benn*, 713 S.W.3d at 311), while we review the court's decision whether to dismiss for a speedy trial violation "de novo, with no presumption of correctness afforded to the lower courts' conclusions," *State v. Hawk*, 170 S.W.3d 547, 549 (Tenn. 2005).

Despite these differences, the factors to be considered in passing on a motion to dismiss under Rule 48(b) are substantially the same as those to be considered when passing on a motion to dismiss for a speedy trial violation. *See Benn*, 713 S.W.2d at 311. When evaluating whether a defendant's right to a speedy trial was violated, this court considers the "[l]ength of delay, the reason for the delay, the defendant's assertion of his

---

[was] shown at trial that the pre-indictment delay . . . caused substantial prejudice to the [defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971). Because the Sixth Amendment right to a speedy trial attached at the defendant's June 4, 2017 arrest, we need not examine the pre-indictment delay to determine whether it violated principles of due process. *Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016) ("The Sixth Amendment's Speedy Trial Clause . . . does not attach until . . . a defendant is arrested or formally accused.").

-4-

right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). When evaluating a motion to dismiss under Rule 48, we consider the length and reason for the delay as well as the prejudice to the defendant occasioned by the delay. *Benn*, 713 S.W.2d at 311.

*Length of Delay*

Generally speaking, "post-accusation delay must approach one year to trigger a speedy trial inquiry," and although "[t]he reasonableness of the length of the delay depends upon the complexity and nature of the case, . . . the presumption that delay has prejudiced the accused intensifies over time." *Simmons*, 54 S.W.3d at 759 (citing *Doggett v. United States*, 505 U.S. 647, 652 (1992); *State v. Utley*, 956 S.W.2d 489, 494 (1997); *State v. Wood*, 924 S.W.2d 342, 346 (1996)). "To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531.

In this case, a period of more than two years elapsed between the defendant's arrest and his pleading guilty, which period of delay is sufficient to warrant review of the remaining factors.

*Reason for the Delay*

Reason for the delay

> generally falls into one of four categories: (1) intentional delay to gain a tactical advantage or to harass the defendant; (2) bureaucratic indifference or negligence, including overcrowded dockets or lack of diligence; (3) delay necessary to the fair and effective prosecution of the case, such as locating a missing witness; and (4) delay caused, or acquiesced, in by the defense, including good faith attempts to plea-bargain or repeated defense requests for continuances.

*Simmons*, 54 S.W.3d at 759 (citations omitted).

Without question, the entirety of the delay in this case is attributable to the State. The State attributed part of the delay to the Tennessee Bureau of Investigation ("TBI"). The TBI report indicates, however, that the TBI did not receive the evidence in this case until April 19, 2018, nearly a year after the defendant's arrest. The report was not issued until some eight months later, on December 18, 2018, even though no chemical

analysis was performed on any of the substances in this case.[3] Despite having received the TBI report in December 2018, the State had still not presented the defendant's case to the grand jury by the time he filed his motion to dismiss in May 2019. The State attributed this part of the delay to the heavy caseload in the district attorney's office. "Crowded dockets, the lack of judges or lawyers, and other factors" such as the delay attributable to the TBI, "no doubt make some delays inevitable." *Dickey v. Florida*, 398 U.S. 30, 38 (1970). The Supreme Court has explained that

> [u]nintentional delays caused by overcrowded court dockets or understaffed prosecutors are among the factors to be weighed less heavily than intentional delay, calculated to hamper the defense, in determining whether the Sixth Amendment has been violated but . . . . they must 'nevertheless . . . be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'

*Strunk v. United States*, 412 U.S. 434, 436 (1973) (citations omitted). "As the United States Supreme Court explained, 'our toleration of such negligence varies inversely with its protractedness and its consequent threat to the fairness of the accused's trial.'" *Simmons*, 54 S.W.3d at 760 (quoting *Doggett*, 505 U.S. at 656). The defendant was charged with misdemeanor offenses, the most serious of which carried a sentence of only 11 months and 29 days.

> Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.

*Doggett*, 505 U.S. at 657. In consequence, a delay of more than two years, double that necessary to trigger an inquiry into the other speedy trial factors and twice as long as the maximum sentence that could be imposed for any of the charged offenses, weighs against the State.

---

[3] The examining agent reported that "[p]harmaceutical references indicate[d]" that the 61 capsules seized from the defendant contained the non-controlled substance gabapentin. Similarly, "[p]resumptive identification" of the "3 strip(s)" in the defendant's possession as buprenorphine "was obtained by comparing item's markings to pharmaceutical references." No testing was performed on the "white residue" because "[a]nalysis would require consumption of the entire sample."

*Defendant's Assertion of the Right to Speedy Trial*

The defendant asserted his right to a speedy trial in writing in May 2019. This factor weighs in favor of the defendant.

*Prejudice*

"The final and most important factor" in our "analysis is whether the accused suffered prejudice from the delay." *Simmons*, 54 S.W.3d at 760 (citations omitted).

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

*Barker*, 407 U.S. at 432. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Here, when pressed by the trial court, the defendant could not identify any prejudice to his ability to present a defense that had been occasioned by the delay in this case. Importantly, however, "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655. Prosecutorial negligence is not "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 657. Instead, courts "generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify," and include this in its assessment of the defendant's speedy trial claim. *Id.* at 655; *Moore v. Arizona*, 414 U.S. 25, 26 (1973) ("*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial.")

The trial court noted, and the State argues on appeal, that any prejudice to the defendant was mitigated because the defendant was on bond while this case was pending. The Supreme Court has observed, however, that even when a defendant is not subject to pretrial incarceration, "[a]rrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Doggett*, 505 U.S. at 655;

*see also MacDonald*, 456 U.S. at 8 ("The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."); *Barker*, 407 U.S. at 533 (stating that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility").

That being said, the record does not contain any suggestion that the presence of the unresolved charges in this case disadvantaged the defendant. The only evidence on this issue was Ms. Price's testimony that she was aware that the defendant had expressed that "he was having some issues with his employer" because of the necessity of attending the proceedings. No evidence suggested what the "issues" might have been or that the "issues" had threatened the defendant's livelihood. The defendant did not present any evidence that the conditions of his bond were particularly oppressive. To be sure, there is some point at which pretrial delay crosses a threshold into an area where the prejudice to be presumed by the delay overcomes all the other factors, but this case did not reach that point.

We do not condone the delay in this misdemeanor case. Upon our de novo review, however, we conclude that the delay did not deprive the defendant of his right to a speedy trial. Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE